UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACI POWERS,

        Plaintiff,        CIVIL ACTION NO. 13-cv-10575

vs.

        DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Staci Powers seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket nos. 8 and 9)[1] and Defendant's Motion for Summary Judgment (docket no. 11). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

I.        **RECOMMENDATION:**

---

[1] Plaintiff filed two identical Motions for Summary Judgment on the same day, May 28, 2013. (*Compare* docket no 8, *with* docket no. 9.) The undersigned will consider these two identical motions as one Motion for Summary Judgment for purposes of this report and recommendation and will cite only to the Motion filed as docket number 8.

The Court recommends that Plaintiff's Motion(s) for Summary Judgment (docket nos. 8 and 9) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 11) be GRANTED.

## II. PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of September 28, 2009, alleging that she had been disabled since December 16, 2008, due to back pain, carpal tunnel syndrome, ADHD, and dysthymic disorder. (*See* TR 23, 25.) The Social Security Administration denied benefits. (*See* TR 23.) Plaintiff requested a *de novo* hearing, which was held on June 29, 2011, via video, before Administrative Law Judge (ALJ) Charles Headrick, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work as an assembler and, alternatively, a significant number of jobs in the national economy. (TR 23-30.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff was 45 years old at the time of the administrative hearing and 42 years old at the time of alleged onset. (*See* TR 39.) At the time of the hearing, Plaintiff was single and lived at her father's home with her father and her 13-year-old daughter. (TR 39.) She told the ALJ that she had graduated from high school and had worked until December 15, 2008, as an automotive assembler at General Motors. (TR 40-41.) She testified that she left her position at GM because of pain in her neck and shoulder. (TR 41.) Plaintiff told the ALJ that she tried to do some household chores, like laundry, but her daughter and father did most of the work because she had trouble grasping things.

(TR 41-42.)

Plaintiff testified that her physical impairments included pain in her left shoulder, her neck, her hands, her lower back, and her left leg. (TR 42.) She told the ALJ that she could lift two or three pounds and that she could not lift a gallon of milk because of her problems with her hands and her lower back. (TR 42.) She added that she could not walk around the block and that she could only comfortably stand for about five minutes due to pain in her back and her leg, which she testified would give out more than weekly. (TR 43.) She also told the ALJ that she could only sit for five or ten minutes.[2] (TR 43-44.) Plaintiff further testified that she suffered from depression and ADHD, which caused her to have trouble with focus, concentration, and carrying out tasks. (TR 46-47.)

Plaintiff testified that she was taking "numerous medications" for her impairments, which she told the ALJ caused her to be drowsy, lose focus, become hyperactive, and lose her appetite. (TR 44.) She also added that she had "difficulty performing simple two-step tasks" and could not sleep at night. (TR 44.) She stated that she took two or three naps each day. (TR 44.)

Plaintiff testified that her average day consisted of sitting around watching television and moving back and forth from her couch to her recliner. (TR 45.) She told the ALJ that she did not do anything outside of her home and that she had a hard time dealing with large crowds or dealing with supervision or orders. (TR 45-46.) Plaintiff also added that she had regular bouts of depression, including occasions where she would lie in her room with the door shut for two or three weeks at a time. (TR 45-46.)

B. **Medical Record**

---

[2] Plaintiff acknowledged, though, that she had taken a 90-minute road trip "a couple of months" before the hearing, but added that she stopped several times. (TR 47-48.) She then testified that she could ride in a car for a half hour to forty minutes. (TR 48.)

3

Plaintiff sets forth a brief procedural history and discusses the ALJ's basis for denying her benefits, but she does not directly discuss her medical record. (Docket no. 10 at 6-7.) Defendant's account of Plaintiff's medical history is largely consistent with the ALJ's discussion of her medical record. (*Compare* docket no. 11 at 8-10, *with* TR 27-29.) Therefore, the Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion. (TR 27-29.) The Court has, however, conducted an independent review of Plaintiff's medical record and will incorporate comments and citations as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

The ALJ first asked the VE to describe Plaintiff's past work activity from a vocational standpoint. (TR 50.) The VE testified that Plaintiff's "assembly jobs in the auto factory business [are] considered medium strength demand." (TR 50.)

The ALJ then asked the VE to consider a hypothetical person of Plaintiff's age, education, and past relevant work experience who was physically capable of performing medium work activities and simple tasks. (TR 50.) The VE testified that such an individual could perform Plaintiff's past relevant work as an assembly worker. (TR 51.) The ALJ then asked whether such an individual could perform any other jobs in the national economy. (TR 51.) The VE testified that such an individual could perform medium work as a hand packer or a sandwich maker and light work as a hand packer, an office helper, or a messenger. (TR 51.)

The ALJ then asked the VE to assume that Plaintiff's testimony was credible. The VE testified that an individual with such limitations could not perform Plaintiff's past work and "would have trouble finding competitive work." (TR 52.)

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the act through the date

of his decision; that Plaintiff had not engaged in substantial gainful activity since December 16, 2008, the alleged onset date; and that Plaintiff suffered from the following severe impairments: mild left carpal tunnel syndrome; mild degenerative disc disease; attention deficit hyperactivity disorder; and a dysthymic disorder. (TR 25.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 26.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had "the residual functional capacity to perform medium work . . . except she could only perform simple, sustained tasks with persistence." (TR 26-29.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing her past relevant work as an assembler. (TR 29.) Additionally, the ALJ found that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 29-30.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 16, 2008, through the date of the ALJ's decision. (TR 30.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth

step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because (1) the ALJ erred as a matter of law in determining that Plaintiff could return to her past relevant work as an assembler, and (2) the ALJ erred when he "provid[ed] an improper hypothetical." (Docket no. 8 at 7.)

### 1. The ALJ's Hypothetical Questions to the VE

To the extent that Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE, the ALJ is only required to incorporate in his hypotheticals those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of HHS.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ presented all of the limitations in Plaintiff's RFC in his hypothetical questions to the VE, and the VE testified that such an individual could perform Plaintiff's past relevant work and that there are also other jobs available for a person with these limitations. Indeed, Plaintiff implicitly acknowledges that the ALJ *did* ask the VE such a hypothetical question and merely argues that the ALJ "then ignored the proper conclusion in the testimony of the VE based on the *correct* hypothetical." (Docket no. 8 at 7 (emphasis added.) Thus, Plaintiff does not assert that the ALJ erred in the structure of the hypothetical questions but, instead, argues that the ALJ should have adopted an RFC in line with second hypothetical that he posed instead of the first. (*See id.*)

An ALJ determines a plaintiff's RFC and *then* determines whether an individual with that RFC can perform the plaintiff's past relevant work or any other work in the national economy. *See* 20 C.F.R. § 404.1520(a)-(g). Notably, an ALJ typically asks hypothetical questions that are more limiting than the plaintiff's ultimate RFC because the ALJ needs a broad basis under which to make a determination. That is, if the ALJ does not ask such questions and ultimately determines that a plaintiff's RFC is more restrictive than the limitations posed in the hypothetical question, the ALJ would have no relevant testimony from the VE to assist in making a determination. Plaintiff's argument that the ALJ must adopt an RFC based on any one hypothetical question presented to the VE has no basis in law; indeed, Plaintiff does not even attempt to point to any law in support of his argument. Plaintiff's argument fails.

    **2.**    **Plaintiff's Remaining Argument(s)**

Although Plaintiff asserts generally that the ALJ "erred as a matter of law in determining that [Plaintiff] could return to her past relevant work," her argument is convoluted. (*See* docket no. 8 at 7-12.) Plaintiff appears to argue that (1) the ALJ improperly allowed the VE to make the Step-4 determination that she could perform her past relevant work, (2) Plaintiff could not perform work as an assembler because of her alleged limitations, (3) the ALJ "unitarily (sic) decide[d] to remove part of [Plaintiff's] job[] requirements in order to make it 'fit in' to his [RFC findings]," (4) the ALJ failed to make accommodations for Plaintiff's carpal tunnel syndrome, her neck, back, and leg pain, and her mental disorder, (5) the ALJ erred when he denied Plaintiff's claim at Step 4 and made an alternative determination at Step 5, and (6) the ALJ ignored relevant evidence in making his determination. (*Id.*)

### A.     The ALJ's Step-4 Decision

Plaintiff correctly points out that the ALJ's Step-4 analysis "cannot be delegated to the VE" and implies that, here, the ALJ improperly delegated the same. (*Id.* at 7.) Plaintiff's only basis for this assertion, however, appears to be that the ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and past relevant work experience who was physically capable of performing medium work activities and simple tasks could perform Plaintiff's past relevant work as an auto assembler. (*Id.*) But asking such a hypothetical does not delegate the determination to the VE. This is precisely why the ALJ asks the VE questions in terms of hypotheticals rather than whether a specific plaintiff could perform her past relevant work. Here, the ALJ did not allow the VE to make the Step-4 determination. The ALJ determined that Plaintiff had the RFC to perform medium work limited to simple, sustained tasks with persistence. (TR 26-29.) Then, in reliance on the VE's testimony, the ALJ determined that Plaintiff's past relevant work as an assembler "was unskilled and classified as medium in exertion." (TR 29.) The ALJ then stated as follows: "In

comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (TR 29.) Nothing in the ALJ's decision or the administrative hearing suggests that the ALJ delegated this decision to the VE.

### B. Plaintiff's Ability to Perform Her Past Relevant Work; the ALJ's Findings Related to Her Job Requirements; and Plaintiff's RFC

Plaintiff asserts that she could not perform her past relevant work based on her physical and mental limitations. (Docket no. 8 at 8.) Plaintiff begins by "taking into consideration all of the potential duties that she is responsible for, whether she routinely does them or not," at her previous job. (*Id.*) She then lists all of the functional limitations that would preclude her from performing these duties and asserts that "[s]he has trouble with these activities." (*Id.*) Plaintiff also argues that the ALJ improperly "remove[d]" some of Plaintiff's duties from his findings and that the ALJ made no accommodations for some of her limitations. Ultimately, Plaintiff asks, "How could she be an assembler" when she can't perform these duties? (*Id.*)

With regard to Plaintiff's job requirements, Plaintiff provides no evidence other than her own assertions with regard to the actual requirements of her job. (*See id.*) As noted, the VE testified that "assembly jobs in the auto factory business [are] considered medium strength demand." SSR 00-4p provides that the adjudicator must resolve a conflict between the DOT and the VE "before relying on the VE . . . evidence." But "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Id.* (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)). Plaintiff had a full and fair opportunity to cross examine the VE through his attorney and chose not to ask any additional questions related to the requirements for Plaintiff's past relevant work. (*See* TR 52.)

Therefore, regardless of Plaintiff's assertion to the contrary, the ALJ did not err when determining the job requirements of Plaintiff's past relevant work. Likewise, the undersigned does not find that the ALJ "removed" any job requirements.

Moreover, Plaintiff's RFC included no limitations that would preclude her from performing many of the duties that she asserts were required of her at her job with General Motors. For example, Plaintiff's RFC does not include any limitations with regard to her fine motor skills, her use of her upper extremities, or her need to sit and stand frequently. The ALJ found that such allegations were not credible in light of the objective medical evidence (*see* TR 27), Plaintiff's daily activities (*see* TR 28), the effectiveness of Plaintiff's medications (*see id.*), her psychological records (*see id*), and her physician's opinions (*see* TR 29). Plaintiff, however, does not challenge the ALJ's credibility finding, and therefore, she has waived this argument.[3] *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

### C. The ALJ's Alternative Step 5 Decision

Even if the ALJ had erred at Step 4 and had improperly allowed the VE to make a determination with regard to Plaintiff's past relevant work, the ALJ alternatively found at Step 5 that Plaintiff could perform a substantial number of jobs in the national and regional economy. (*See* TR 29-30.) Plaintiff argues that this alternative finding is error as a matter of law. As Defendant notes, however, Plaintiff provides no legal support for this assertion. (*See* docket no. 11 at 15 n.2.) Therefore, Plaintiff's argument fails.

---

[3]Even if Plaintiff had not waived her argument with regard to the ALJ's credibility finding, the undersigned notes that the ALJ's credibility determination is supported by substantial evidence. The ALJ discussed the necessary factors under 20 C.F.R. § 416.929(c)(3), and his decision was sufficiently specific to make clear to Plaintiff and the Court the weight he gave to Plaintiff's statements and the reasons for that weight. *See* SSR 96–7p.

### D.     The ALJ's Evaluation of the Evidence

Plaintiff argues that the ALJ "ignore[d] . . . pertinent and relevant evidence because otherwise he would have had to conclude that [Plaintiff] could not perform [any work] because of the limitations involving her low back, neck, hands, and shoulder." (Docket no. 8 at 11.) Plaintiff's assertion implies that the ALJ intentionally left out relevant evidence to reach a predetermined conclusion. This is a bold accusation that the undersigned will not address herein because there is no mandate that the ALJ discuss all of the evidence of record. To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Here, the ALJ set forth a detailed review of Plaintiffs' medical record when formulating Plaintiff's RFC and assessing her credibility. (See TR 27-28.) And while the ALJ may not have addressed every piece of evidence in his written decision, there is nothing to suggest that the ALJ did not consider the entire record.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion(s) for Summary Judgment (docket nos. 8 and 9) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 11) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 22, 2014         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 22, 2014         s/ Lisa C. Bartlett
                                Case Manager

13